UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WARREN HEIT AND DEB HEIT, | Case No. 2:23-cv-00507-BLW |
| Plaintiffs, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| SCOTT LIVINGSTON AND SHARI LIVINGSTON, | |
| Defendants. | |

## INTRODUCTION

Before the Court is a Motion to Dismiss First Amended Complaint filed by the Defendants, Scott Livingston and Shari Livingston, through counsel. Dkt. 10. The pro se Plaintiffs, Warren Heit and Deb Heit, have filed a brief in opposition, and the Defendants have replied. Dkts. 13, 14. The Court will grant the motion.

## BACKGROUND

The parties in this case are married couples who own neighboring properties in Coeur d'Alene, Idaho. Mr. and Mrs. Heit reside at their Idaho property, while Mr. and Mrs. Livingston reside in Nevada. *First Am. Compl.*, Dkt. 8, ¶ 4. Both properties are located on an extremely steep hillside. From the nearest road, the

parties and their visitors must descend an approximately 60-foot slope to reach the residences on either property. *See id.* ¶ 1; *Pls.' Ex. A*,[1] Dkt. 8, ¶ 2. For this reason, a motorized tram was constructed on an unknown date which services both properties. *See Pls.' Ex. A*, Dkt. 8, ¶ 2. The shared tram is situated on the Heits' property. *See id.*

A Joint Use and Maintenance Agreement between the Heits and the Livingstons, as successors in interest, governs the Livingstons' access to the shared tram. *First Am. Compl.*, Dkt. 8, ¶ 2; *Pls.' Ex. A*, Dkt. 8, at 12–19. The Agreement was recorded as an easement on the Heits' property in December 2012. *First Am. Compl.*, Dkt. 8, ¶ 2; *Pls.' Ex. A*, Dkt. 8, at 12. The Agreement provides, in pertinent part:

1. The owners of the property described on Exhibit "A" shall have an easement and right of access over the property described on Exhibit "B" for ingress and egress to and from the tram located on the Exhibit "B" property, it being understood and agreed that said tram shall hereinafter be utilized in common by the owners of the properties described on Exhibit "A" and Exhibit "B" attached

---

[1] A court may consider certain materials, such as documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice, without converting a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). The Livingstons have not objected to the attachment of the exhibits and no party has argued that the motion to dismiss should be treated as a motion for summary judgment. The Court will consider Exhibits A, B, and C to be part of the First Amended Complaint.

hereto, and their guests and invitees.

2. The parties agree that all the costs of electrical power, operation, maintenance, repair, and necessary replacement associated with said tram shall be shared equally between the owners of the two parcels above referred to. . . .

3. This agreement and the rights and obligations contained herein shall be binding upon and inure to the benefit of the parties hereto, their heirs and assigns, and shall be appurtenant to the two parcels above described. . . .

*Pls.' Ex. A*, Dkt. 8, at 12–13. When the Heits purchased the property described in the Agreement as "Exhibit 'B'", the property's previous owner required them to sign the Agreement. *First Am. Compl.*, Dkt. 8, ¶ 11. Another individual owned the property described as "Exhibit 'A'". That individual also signed the Agreement. *Pls.' Ex. A*, Dkt. 8, at 14. The Livingstons subsequently purchased the property described as "Exhibit 'A'" in February 2013. *First Am. Compl.*, Dkt. 8, ¶ 16.

The Heits allege that, since purchasing the property in February 2013, the Livingstons have used the shared tram frequently to traverse the steep slope. *Id.* ¶ 17. They allege that this use has contributed to the tram's wear and tear. *Id.* ¶ 20. The Heits allege that the parties agreed in 2023 that the tram needed to be replaced. *Id.* ¶¶ 21, 22. However, the parties disagreed about certain characteristics that the new shared tram should have. *Id.* ¶ 24. The Heits eventually agreed to the Livingstons' preferences for the new shared tram, but were informed that the Livingstons would not share the cost of the project. *Id.* ¶¶ 26, 27. The Livingstons,

through counsel, notified the Heits in a letter dated October 13, 2023, that they

would construct a separate tram on their own property but would continue using

the shared tram until construction was complete. *Id.* ¶¶ 28, 29. They requested that

the Heits relocate the shared tram's electrical system from the Livingstons'

property to the Heits' property at the Heits' expense. *Pls.' Ex. B*, Dkt. 8, at 21.

Finally, the letter stated that:

> the Livingstons will record a Notice of Termination of their interest in
> the Easement. Once the Notice of Termination has been recorded, Mr.
> and Mrs. Livingston will no longer contribute towards any
> maintenance of the tram located on your property, as their rights and
> obligations under the Easement will be terminated.

*Id.*

The Heits allege that the Livingstons will not be able to construct a tram on

their own property without trespassing on the Heits' property. *First Am. Compl.*,

Dkt. 8, ¶ 33. They also allege that the Livingstons have refused to share in the costs

of maintaining the shared tram, but do not indicate how long the Livingstons have

allegedly failed to meet this obligation. *See id.* ¶¶ 36, 43, 49.

The Heits filed a complaint invoking this Court's diversity jurisdiction

against the Livingstons in November 2023. *Compl.*, Dkt. 1. The Livingstons filed a

motion to dismiss which was rendered moot by the Heits' filing of the First

Amended Complaint. Dkts. 5, 8; *see Order*, Dkt. 17 (denying the Livingstons' first

motion to dismiss as moot). The First Amended Complaint raises six causes of action: a claim for specific performance (Count I); claims for breach of contract and anticipatory breach of contract (Counts II and III, respectively); a claim for unjust enrichment (Count IV); and claims for injunctions to prevent the Livingstons' construction from invading the Heits' property and disturbing the shared tram, as well as to prevent the termination of the easement (Counts V and VI, respectively). *First Am. Compl.*, Dkt. 8.

The Livingstons move to dismiss Counts I and VI pursuant to Rule 12(b)(6). They move to dismiss Counts II and III under the same authority, but only to the extent that those Counts seek relief based on the Livingstons' alleged intent to unilaterally terminate the easement. *Defs.' Mot.*, Dkt. 10, at 1. Additionally, they move pursuant to Rule 12(b)(1) to dismiss Count V for lack of ripeness. *Id.* at 2. The Livingstons do not seek the dismissal of Count IV. *See generally id.* After thoroughly reviewing the briefing, the Court finds oral argument unnecessary to issuing its Order.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it

rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While a complaint challenged by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Id*. at 555. All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Id.* at 571. To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face."  *Id*. at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id*. at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  *Id*.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

The Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  First, the court need not accept legal conclusions as true which are couched as factual allegations.  *Id*.  Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.  Second, to survive a motion to dismiss, a

complaint must state a plausible claim for relief. *Id*. at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## ANALYSIS

The Court will first consider the Livingstons' arguments regarding Counts I and VI because those Counts suffer from the same legal defect. Second, the Court will consider the Livingstons' arguments regarding the requested limited dismissal of Counts II and III because the grounds for relief within those Counts are identical. The Court will examine Count V last.

### A.    Counts I and VI

Count I asserts a claim for specific performance of the easement. Specifically, the Heits allege that the Livingstons have breached the easement by refusing to share in the payment of the replacement cost for the shared tram; refusing to share in the payment of maintenance costs of the shared tram; demanding that the Heits relocate the tram's electrical system to their property at their own expense; and planning to unilaterally terminate the easement. *First Am. Compl.*, Dkt. 8, ¶¶ 35–40. Count VI seeks an injunction against the anticipated unilateral termination of the easement by the Livingstons. *Id.* ¶¶ 64–66. The

Livingstons argue that these Counts should be dismissed pursuant to Rule 12(b)(6) because specific performance is not an available enforcement mechanism for an easement of this nature and because an injunction against the termination of an easement would be tantamount to specific performance.[2] *Defs.' Mot.*, Dkt. 10, at 5–6, 9.

In a diversity action, a federal court applies the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, Idaho law applies to non-procedural issues in this case. "Specific performance is an extraordinary remedy that can provide relief when legal remedies are inadequate." *Fazzio v. Mason*, 150 Idaho 591, 594, 249 P.3d 390, 393 (2011) (citation omitted). A court considering whether to order specific performance must "balance the equities between the parties . . . ." *Id.* The decision lies within the trial court's discretion. *Id.*

"An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner." *Tower Asset Sub Inc. v. Lawrence*, 143 Idaho 710, 714, 152 P.3d 581, 585 (2007). "An

---

[2] In addition, the Livingstons argue that Counts II, III, and VI should be dismissed because the owner of a dominant estate to an easement may abandon an easement form which he benefits. *Defs.' Mot.*, Dkt. 10, at 8. The Court will address this argument in its discussion of Counts II and III.

express easement may be created by a written agreement between the owner of the dominant estate and the owner of the servient estate." *Id.* No 'magic words' are needed to create an express easement; rather, "it is necessary only that the parties make clear their intention to establish a servitude." *Id.* (citations omitted). Here, the Heits allege, and the Livingstons do not dispute, that the Joint Use and Maintenance Agreement established an easement on the Heits' property in favor of the Livingstons and imposed on both parties certain duties regarding the upkeep of the shared tram. *Pls. Ex. A*, Dkt. 8, at 12–19; *First Am. Compl.*, Dkt. 8, ¶ 2 (referring to the Agreement as "the Easement"); *Defs.' Mot.*, Dkt. 10, at 5 (same). For the purposes of deciding the Livingstons' motion, the Court construes the Agreement in its entirety as an easement on the Heits' property.

The easement obligates both parties to equally share "all the costs of electrical power, operation, maintenance, repair, and necessary replacement associated with" the shared tram. *Pls.' Ex. A*, Dkt. 8, at 12, 13. It is "binding upon and inure to the benefit of the parties hereto, their heirs and assigns . . . ." *Id.* at 13. The easement has no date of termination or completion. As noted in the motion to dismiss, the Heits effectively request in Counts I and VI that this Court order the Livingstons "to abide by all terms of the Easement in perpetuity." *Defs.' Mot.*, Dkt. 10, at 5–6. Idaho law disapproves of such orders. A court will typically not order

specific performance of "a continuous duty, extending over a series of years, but will leave the aggrieved party to his remedies at law." *Suchan v. Rutherford*, 90 Idaho 288, 300, 410 P.2d 434, 441 (1966) (quoting *Roquemore & Hall v. Mitchell Bros.*, 52 So. 423, 425 (Ala. 1910)). A contract imposing continuous duties should not be enforced through specific performance because such an order would require continuous supervision by the court. *Rutland Marble Co. v. Ripley*, 77 U.S. 339, 358–59, 360 (1870) (reversing an order for specific performance of an agreement to deliver marble which did not include a termination date).

The Heits contend that *Suchan* provides only that a court must consider multiple factors in determining whether specific performance is warranted. *Pls.' Opp'n*, Dkt. 13, at 5–7. *Suchan* concerned a breach by the buyers to a land purchase and sale agreement. It is true that the Supreme Court considered not only the duration of the performance to be ordered, but also whether an adequate remedy at law was available to the sellers; whether the subject property was unique; and whether the seller would lose opportunities for other investments if the Court declined to order specific performance. 90 Idaho at 295–300, 410 P.2d at 438–441. The Court concluded that the seller was not entitled to specific performance of the purchase agreement primarily because the buyer would be required to pay the purchase price incrementally over a period of 18 years. *Id.* at

301, 410 P.2d at 442. It also determined that the subject property was "not unique" and that the record contained little evidence that the seller would lose opportunities for other investments. *Id.* at 296, 410 P.2d at 438–39.

Additionally, the Heits rely on *Fazzio v. Mason* and *Perron v. Hale*, 108 Idaho 578, 701 P.2d 198 (1985) in arguing that specific performance is appropriate to enforce the easement in this case. *Id.* at 6. Like *Suchan*, both cases concerned agreements for the purchase and sale of land. But unlike *Suchan*, orders for specific performance in favor of the sellers were affirmed in both cases. Features common to both cases were that (1) the buyers significantly altered or encumbered the properties while the transactions were pending such that it would have been inequitable to return the properties to the sellers, and (2) the purchase and sale agreements provided that the buyers would pay the full purchase price in cash at closing. *Fazzio*, 249 P.3d at 392–93, 396; *Perron*, 701 P.2d at 203. These cases do not bolster the Heits' position that specific performance should be ordered here because this Court is being asked to order the Livingstons to perform their obligations under the easement indefinitely, rather than order the Livingstons to complete a single transaction, as was ordered in *Fazzio* and *Perron*.

Furthermore, *Fazzio* explained that "[t]he inadequacy of remedies at law is presumed in an action for breach of a real estate purchase and sale agreement due

to the perceived uniqueness of land." 249 P.3d at 393. Because the agreement at issue in this case is not one for the purchase and sale of land, no presumption applies as to the inadequacy of remedies at law for the Livingstons' alleged failure to share in the maintenance and replacement costs of the shared tram.

The continuous nature of the obligations under the easement are not enforceable through specific performance in light of *Suchan* and *Rutland Marble Co.* Count I seeks the Livingstons' specific performance of the easement and Count VI seeks to enjoin the Livingstons from terminating the easement. An injunction to enforce a contract and specific performance of that contract are essentially the same remedy. *Shakey's Inc. v. Martin*, 91 Idaho 758, 765, 430 P.2d 504, 511 (1967). The Court will therefore dismiss Counts I and VI in their entirety without leave to amend. *Kroessler v. CVS Health Corporation*, 977 F.3d 803, 815 (9th Cir. 2020) (leave to amend should be denied if "no amendment would allow the complaint to withstand dismissal as a matter of law.").

## B.     Counts II and III

Counts II and III assert claims for breach of contract and anticipatory breach of contract, respectively. *First Am. Compl.*, Dkt. 8, ¶¶ 41–46, 47–52. The allegations mirror those which provide the basis for Count I and simply assert different causes of action. The Livingstons move to dismiss these Counts pursuant

to Rule 12(b)(6) only to the extent that they are based on the Livingstons' alleged intent to unilaterally terminate the easement. *Defs.' Mot.*, Dkt. 10, at 1; *see First Am. Compl.*, Dkt. 8, ¶¶ 45, 51 (alleging the Livingstons' unilateral termination of the easement would constitute a breach of contract). They argue that Counts II and III fail to state claims upon which relief can be granted because the Livingstons, as owners of the dominant estate, have the legal right to terminate the easement. *Id.* at 8–9.

"The essential features of easements . . . are well settled as a matter of property law." *Marvin M. Brandt Revocable Trust v. United States*, 572 U.S. 93, 104–05 (2014). "Unlike most possessory estates, easements . . . may be unilaterally terminated by abandonment, leaving the servient owner with a possessory estate unencumbered by the servitude." *Id.* at 105 (quoting Restatement (3d) of Property: Servitudes § 1.2(1), cmt. *d*, § 7.4, cmts. *a, f* (1998)). "[I]f the beneficiary of the easement abandons it, the easement disappears . . . ." *Id.*

In this case, there is no dispute that the Livingstons own the dominant state to, or are the "beneficiaries" of, the easement and the Heits own the servient estate because the easement is located on the Heits' property. *First Am. Compl.*, Dkt. 8, ¶ 2; *Pl.s' Ex. A*, Dkt. 8, at 12. Therefore, the Livingstons may lawfully abandon the easement. *See Hawkins v. Bonneville Cty Bd. of Comm'rs*, 151 Idaho 228, 234, 254

P.3d 1224, 1230 (2011) (describing the procedure for terminating an easement).

The Heits contend that the owners of a dominant estate cannot unilaterally terminate an easement "where termination would result in the destruction or damage to Plaintiffs' protectable interests," relying upon *Shakey's Inc*. *Pls.' Opp'n*, Dkt. 13, at 11. They explain that the Livingstons' termination of the easement and construction of a separate tram would impact the Heits' "protectable interests" of not having their property trespassed on and in sharing the cost of replacing the shared tram. *Id.* at 12. The Court is unpersuaded. As the Livingstons note in their reply, *Shakey's Inc.* is inapposite because it considered the applicability of injunctive relief to enforce a non-compete clause in the context of a franchise agreement. The Heits have identified no authority to support their position that the owner of the dominant estate to an easement is not free to abandon the easement without the consent of the owner of the servient estate.

Accordingly, the Court will dismiss Counts II and III to the extent that they seek relief based on the Livingstons' alleged intent to terminate the easement. Because these claims fail as a matter of law, the Heits will not be granted leave to amend them. *See Kroessler*, 977 F.3d at 815. This does not preclude a finding of liability against the Livingstons for any breach of their duties under the easement which occur prior to its termination. *See Whitham Trustee of Kent G. Whitham and*

*Linda M. Whitham Revocable Trust v. Creamer*, 171 Idaho 708, 716–17, 525 P.3d 746, 754–55 (2023) (owners of the property which benefits from an easement have a duty not to increase the burden on the encumbered property). Rather, the Court holds only that a termination of the easement by the Livingstons would not itself constitute a breach.

### C.     Count V

In Count V, the Heits seek an "Injunction to Prevent Construction from Invading Property and Disturbing Shared Tram." *First Am. Compl.*, Dkt. 8, ¶¶ 58–62. The Livingstons argue that this Count is not ripe and should be dismissed pursuant to Rule 12(b)(1) because no trespass is alleged to have taken place. They argue that "[t]he 'trespass' of the [separate] tram is a future potential speculative event that may or may not occur." *Defs.' Mot.*, Dkt. 10, at 7.

Ripeness is "a question of timing . . . ." *Blanchette v. Connecticut General Ins. Corps.*, 419 U.S. 102, 140 (1974). It is a justiciability requirement designed to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (internal citations omitted). Ripeness includes constitutional and prudential components. *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022). Constitutional ripeness is equivalent to "the injury-in-

fact prong of the standing inquiry." *Id.* (internal quotation marks and citations omitted); *see also* U.S. CONST. art. III, § 2 (extending the federal judicial power to encompass only "[c]ases" and "[c]ontroversies").  "Whether framed as an issue of standing or ripeness, an injury must involve 'an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Twitter, Inc.*, 56 F.4th at 1173 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The party asserting the claim for relief bears the burden of establishing ripeness. *Colwell v. Dep't of Health and Human Svcs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). Where, as here, prospective injunctive relief is sought, a plaintiff must allege "an imminent future injury." *Elsharkawi v. United States*, 830 F. App'x 509, 512 (9th Cir. 2020) (citing *Lujan*, 504 U.S. at 564)).

The operative complaint alleges that the Livingstons have indicated that they plan "to build their own separate tram in a place which it is believed will trespass upon the Plaintiff's Property and/or setback." *First Am. Compl.*, Dkt. 8, ¶ 3. Count V explains that "[t]he Defendants are not able to construct a separate tram without trespassing upon the Plaintiffs' property . . . ." *Id.* ¶ 59. The Heits submitted a sole photograph showing grass, a metal railing, and a staircase, but did not clarify what the photograph allegedly depicted until they filed their brief in opposition to the instant motion to dismiss. *See Pls.' Ex. C*, Dkt. 8 at 23; *Pls.' Opp'n*, Dkt. 13, at 8–

9. The First Amended Complaint indicates only that the photograph shows "the lack of space between the Plaintiffs' property line and concrete foundation of the Defendants' garage structure." Dkt. 8 ¶ 33. But no property lines or plans for the separate tram are superimposed on the image, leaving the Court unable to discern how the photograph supports the Heits' claim.

Furthermore, Count V's allegation that the Livingstons stated they planned to remove the electrical panel for the Shared Tram as part of their construction efforts regarding their separate tram is contradicted by the letter provided by the Heits with their pleading. *Compare First Am. Compl.*, Dkt. 8, ¶ 60 *with Pls.' Ex. B*, Dkt. 8, at 21 ("At the beginning of the Livingston's tram construction, they respectfully request you relocate the electrical system for the existing tram . . . .").

While the Court must accept all well-pleaded facts as true for the purposes of deciding a motion to dismiss, the complaint's factual content must permit a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. at 556. In this respect Count V falls short. The First Amended Complaint does not allege facts tending to show that the Livingstons cannot construct their separate tram without trespassing on the Heits' property or disturbing the shared tram. It therefore fails to plead "an imminent future injury." Accordingly, the Court will dismiss Count V with leave to amend.

MEMORANDUM DECISION AND ORDER - 17

## ORDER

**IT IS ORDERED that:**

1.    Defendants' Motion to Dismiss First Amended Complaint (Dkt. 10) is

      **GRANTED**.

2.    Count I and Count VI are DISMISSED without leave to amend.

3.    Count II and Count III, only to the extent that they seek relief based

      on the Livingstons' alleged intent to unilaterally terminate the

      easement, are DISMISSED without leave to amend.

4.    Count V is DISMISSED with leave to amend.

DATED: April 9, 2024

B. Lynn Winmill
U.S. District Court Judge