1  WARREN S. HEIT
   Coeur d'Alene, ID 83814
2  warrenheit@yahoo.com

3  Plaintiff, In Pro Per
   and Counsel for Plaintiff Deborah E. Heit
4

**U.S. COURTS**

MAY 06 2024

Rcvd ___ Filed ___ Time 10:13am
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

5

6                UNITED STATES DISTRICT COURT

7                     DISTRICT OF IDAHO

8

9  Warren Heit and Deb Heit,                    Case No. 2:23-cv-00507-BLW

10
                Plaintiff,
11                                              **SECOND AMENDED COMPLAINT**

12     v.                                       **JURY TRIAL REQUESTED**

13  Scott Livingston and Shari Livingston,

14              Defendants.

15

16                      **SECOND AMENDED COMPLAINT FOR**
                **BREACH OF CONTRACT, ANTICIPATORY BREACH OF CONTRACT,**
17                  <u>**UNJUST ENRICHMENT, INJUNTION, AND DAMAGES**</u>

18          The Plaintiffs, Warren and Deb Heit (hereinafter, the "Plaintiffs"), a married couple and

19  residents of and owners of a property located in Coeur d'Alene, Idaho (hereinafter "Plaintiffs'

20  Property"), hereby file this second amended complaint for breach of contract, anticipatory breach of

21  contract, unjust enrichment, and injunction to prevent construction from invading property, and

22  damages against Defendants, Scott Livingston and Shari Livingston (hereinafter, the "Defendants"),

23  a married couple who reside in Nevada and own a home in Coeur d'Alene, Idaho, the neighboring

24  property (Defendants' Property).  Plaintiffs allege and aver as follows:

25

26

27

28

## I.    INTRODUCTION

1.      This case involves and arises out of the Defendants' unlawful violation of their contractual obligation to share equally in paying for the replacement of a tram ("Shared Tram") that services both the Plaintiffs' Property and the Defendants' neighboring Property.  The Shared Tram is situated on the Plaintiffs' Property.  Since 2013, the Defendants and their guests have frequently used (and continue to use) the Shared Tram to descend and ascend an extremely steep hillside (approximately a 60-foot elevation change).  The Shared Tram transports the Defendants and their guests down the steep hillside to allow them to get to the Defendants' front door.  The Shared Tram transports the Defendants and their guests up the steep hill to allow them to get to the Defendant's garage and access to the road. Without compensation or appreciation, the Defendants have quietly enjoyed the use of the Shared Tram for over a decade.

2.      The Defendants' access to the Shared Tram is pursuant to a Joint Use and Maintenance Agreement dated December 14, 2012 by and between the Plaintiffs and the Defendants, as successors in interest.  The Joint Agreement was recorded as an easement on the Plaintiff's Property (the "Easement", a copy of which is attached as Exhibit A).  Section 2 of the Easement obligates the Defendants to "share equally" in the "necessary replacement [costs] associated with a [shared] tram…"

3.      In the summer of 2023, the Defendants agreed the Shared Tram needed to be replaced.  However, after enjoying the frequent use of the Shared Tram by themselves and their guests for over a decade, the Defendants notified the Plaintiffs that they were not going to share in the cost of replacing the Shared Tram.  The Defendants told the Plaintiffs that the Defendants wanted to abandon the Shared Tram and unlawfully terminate the Easement.  The Defendants placed the entire burden of replacing the Shared Tram on the Plaintiffs. Instead of fulfilling their contractual obligations, the Defendants indicated that they planned to build their own separate tram in a place which it is believed will trespass upon the Plaintiff's Property and/or setback.  Even though abandoning the Shared Tram and their financial and other obligations with respect thereto,

1  Defendants informed Plaintiffs that Defendants wanted to continue using the Shared Tram through

2  next summer while the Defendants build their own separate tram.

## II.  JURISDICTION and VENUE

4.      The Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. § 1332 under diversity of citizenships as the parties are diverse and the amount in controversy exceeds $75,000.  The Plaintiffs reside in Idaho, and, upon information and belief, the Defendants reside in Nevada.

5.      The Court has personal jurisdiction over the Defendants as the Defendants own property in the state of Idaho and live in the state of Idaho part-time.  There are also minimum contacts under Idaho's long arm statute §5-514. Acts Subjecting Person to Jurisdiction of Courts: "Any person, firm, company, association or corporation, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, firm, company, association or corporation, and if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts: (a) The transaction of any business within this state...; (b) The commission of a tortious act within this state; (c) The ownership, use or possession of any real property situate within this state...". In this case, the Defendants own, use, and possess real property within Kootenai County, Idaho, transact business within Kootenai County, Idaho and intend to commit trespass within Kootenai County, Idaho.

6.      Venue is proper under 28 U.S.C. §1391(b) in the judicial district as a substantial part of the events or omissions giving rise to the claim, occurred, or a substantial part of property that is the subject of the action is situated in the judicial district.

## III.  THE PARTIES

7.      Plaintiffs, a married couple, are citizens of Kootenai County Idaho and reside in Coeur d'Alene Idaho.  Plaintiffs own and operate a restaurant in the heart of downtown Coeur

1   d'Alene on Sherman Avenue serving breakfast, bagels, panini, burgers, pizza, soup, salad, wings and

2   cookies to Coeur d'Alene families and tourists since 2017.

3        8.    Defendants, a married couple, are citizens of Clark County, Nevada and are residents

4   of Henderson Nevada.

5

6   ## IV.  STATEMENT OF FACTS

7        9.    Plaintiffs' Property and Defendants' Property are neighboring properties located in

8   Coeur d'Alene.  Both properties are situated on a steep hillside (an approximately 60-foot elevation

9   change) served by the Shared Tram.

10       10.    The Shared Tram resides entirely on the Plaintiffs' Property.

11       11.    When the Plaintiffs purchased the Plaintiffs' Property in 2012, the previous owner

12  required the Plaintiffs to sign the Easement (Exhibit A).

13       12.    Section 1 of the Easement gives the owner of the Defendants' Property an easement

14  and right of access for ingress and egress to the Joint Tram.

15       13.    Section 2 of the Easement states that "The parties agree that all the costs of electrical

16  power, operation, maintenance, repair, and necessary replacement associated with said tram shall be

17  shared equally between the owners of the two parcels above referred to.  In the event an owner of

18  either parcel fails to pay the costs of operation, maintenance, repair or necessary replacement as

19  above required, and an action is brought to collect or enforce the terms hereof, the prevailing party to

20  such action shall be entitled to attorney's fees and costs incurred therein."

21       14.    Section 3 of the Easement states, "This agreement and the rights and obligations

22  contained herein shall be binding upon and inure to the benefit of the parties hereto, their heirs and

23  assigns, and shall be appurtenant to the two parcels above described." The Easement is an

24  enforceable agreement between the Plaintiffs and Defendants as the Defendants are the assignees of

25  the previous owner.

26       15.    The Easement was recorded in 2012 under Kootenai County Instrument No.

27  XXXXXX0000 [Identifying Information Redacted Pursuant to Local Rules]

28

SECOND AMENDED COMPLAINT

16.     Upon information and belief, the Defendants purchased the Defendants' Property in February 2013.

17.     Since purchasing their property in February 2013, the Defendants and their guests have frequently used the Shared Tram to descend and ascend the steep hillside with its approximately 60-foot elevation change.

18.     The Shared Tram transports the Defendants and their guests down the steep hillside to allow them to get to the Defendants' front door.

19.     The Shared Tram transports the Defendants and their guests up the steep hillside to allow them to get to the Defendant's garage and access to the road.

20.     The Defendant and their guests have contributed to the wear and tear of the Shared Tram.

21.     The Plaintiffs and Defendants discussed the need to replace the Shared Tram multiple times during the spring and summer of 2023.

22.     The Defendants agreed the Shared Tram needed to be replaced.

23.     The Plaintiffs and Defendants worked with a third-party tram manufacturer to develop plans to replace the Shared Tram with a new proposed tram.

24.     The Plaintiffs and Defendants had a difference of opinion about the design of the carriage for the new proposed tram.  The Defendants preferred a fully enclosed plexiglass carriage. The Plaintiffs preferred an open-air carriage with a canopy.

25.     The Defendants insisted that the new proposed tram include a fully enclosed plexiglass tram.

26.     The Plaintiffs, although against their desire for an open-air carriage, acceded to the Defendants' demand to replace the Shared Tram with a tram having a fully enclosed plexiglass carriage and requested that the Defendants share the cost to replace the Shared Tram.

27.     The Defendants informed the Plaintiffs that they would not share in replacing the Shared Tram.

28.     One October 30, 2023, the Plaintiffs received a letter dated October 13, 2023 from

SECOND AMENDED COMPLAINT

1    lawyers hired by the Defendants (attached as Exhibit B and hereinafter, the "Defendants' October 13

2    Letter").

3         29.    The Defendants' October 13 Letter states: "Mr. and Mrs. Livingston are constructing

4    their own tram which will be located entirely on their property.  Until their tram is completed, the

5    Livingstons will continue to use and contribute toward the maintenance of the existing tram."

6         30.    The Defendants' October 13 Letter continues: "Currently, the electrical system for the

7    tram is located on the Livingston's property.  At the beginning of the Livingston's tram construction,

8    they respectfully request you relocate the electrical system for the existing tram to your property at

9    your expense."

10        31.    The Defendants' October 13 Letter next states: "After their tram is completed, the

11   Livingstons will record a Notice of Termination of their interest in the Easement.  Once the Notice

12   of Termination has been recorded, Mr. and Mrs. Livingston will no longer contribute towards any

13   maintenance of the tram located on your property, as their rights and obligations under the Easement

14   will be terminated."

15        32.    The October 13 Letter concludes "We wanted to make you aware so that you could

16   adequately prepare for the Notice of Termination to be recorded.  We will provide you with a copy

17   of the Notice of Termination once it is recorded."

18        33.    A first page from the structural engineering plans for Defendants' separate tram is

19   attached as Exhibit C ("Site Plan").  The page is entitled "AN LOOR RANG LAN."  Upon

20   information and belief, Exhibit C shows a drawing of a top-down view of the location of

21   Defendants' separate tram.

22        34.    A second page from the structural engineering plans for Defendants' separate tram is

23   attached as Exhibit C ("Site Plan").  The page is entitled "SITE SECTION."  Upon information and

24   belief, it shows the property line between Plaintiffs' and Defendants' respective properties.

25        35.    All portions of the southern edge of Defendants' separate tram as shown on Exhibit C

26   are within ten (10') feet of the property line between Plaintiffs' and Defendants' respective

27   properties as shown on Exhibit D.

28

SECOND AMENDED COMPLAINT

36.     In at least one location, Defendants' separate tram is less than four feet (4') from the property line between Plaintiffs' and Defendants' respective properties.

37.     Upon information and belief, the applicable setback applicable to Defendants' construction of their new separate tram is 10 feet (10').

38.     Upon information and belief, Defendants' contractors involved in the construction of Defendants' separate tram will trespass on Plaintiffs' property to construct Defendants' separate tram.

39.     Upon information and belief, Defendants will require the removal of the electrical system for the Shared Tram if Plaintiffs do not voluntarily remove it.

## V.     CAUSES OF ACTION

### COUNT I: Breach of Contract

40.     Plaintiffs hereby incorporate and adopt each and every allegation in the preceding paragraphs numbers 1 through 39.

41.     Defendants refuse to share in the payment of the replacement cost for replacing the Shared Tram. This is a breach of the Easement.

42.     Defendants demand that the Plaintiffs relocate the electrical system for the existing Shared Tram to Plaintiff's Property at Plaintiff's expense. This is a breach of the Easement.

43.     Plaintiffs have and will suffer damages because of Defendants' breach in an amount to be proven at trial.

### COUNT II: Anticipatory Breach of Contract

44.     Plaintiffs hereby incorporate and adopt each and every allegation in the preceding paragraphs numbers 1 through 43.

45.     Defendants refuse to share in the payment of the replacement cost for replacing the Shared Tram. This is an anticipatory breach of the Easement.

SECOND AMENDED COMPLAINT

46.     Defendants demand that the Plaintiffs relocate the electrical system for the existing Shared Tram to Plaintiff's Property at Plaintiff's expense.  This is an anticipatory breach of the Easement.

47.     Plaintiffs have and will suffer damages because of Defendants' breach in an amount to be proven at trial.

### COUNT III: Unjust Enrichment

48.     Plaintiffs hereby incorporate and adopt each and every allegation in the preceding paragraphs numbers 1 through 47.

49.     For over a decade, Defendants and their guests have enjoyed and benefited from the frequent use of the Shared Tram to descend and ascend the steep hillside to and from the Defendants' house.

50.     Defendants have accepted the benefit conferred upon them and their guests by the Plaintiffs of being allowed to frequently use the Shared Tram to descend and ascend the steep hillside to get to Defendants' house.

51.     It is unjust for Defendants to have accepted the benefit conferred upon them by Plaintiffs without payment to Plaintiffs.

52.     Defendants should be ordered to pay Plaintiffs an amount to be proven at trial.

**COUNT IV: Injunction to Prevent Construction from Invading Property and Disturbing Shared Tram**

53.    Plaintiffs hereby incorporate and adopt each and every allegation in the preceding paragraphs numbers 1 through 52.

54.    Unless enjoined by this Court, Defendants' separate tram will be permanently within the setback applicable to Defendants' construction of their new separate tram.

55.    Unless enjoined by this Court, Defendants' contractors will trespass on Plaintiffs' property to construct Defendants' separate tram.

56.    Unless enjoined by this Court, the removal of the electrical system for the Shared Tram will disturb and disrupt the operation of the Shared Tram.

57.    Monetary damages would not adequately compensate the Plaintiffs and/or cannot be adequately measured for the injuries Plaintiffs sustained, are sustaining, and/or will sustain as a result of the Defendants' construction trespassing upon the Plaintiffs' property and/or the setbacks associated therewith and disturbing the Shared Tram.

********* THIS SPACE INTENTIONALLY LEFT BLANK *********

SECOND AMENDED COMPLAINT

1

2                           V.    **PRAYER FOR RELIEF**

3          WHEREFORE, Plaintiffs pray for judgment as follows:

4          58.    That this Court award to Plaintiffs damages in an amount to be proven at trial.

5          59.    That this Court preliminarily and permanently enjoins Defendants from engaging in

6    construction which trespasses upon Plaintiffs' property and/or setbacks associated therewith or

7    disturbs the Shared Tram.

8          60.    That this Court award attorneys' fees, costs, and pre-judgment interests to Plaintiffs.

9          61.    That this Court grant such other and further relief as this Court deems equitable and

10   just under the circumstances.

11

12

13   Dated: May 6, 2024              By:    _____

14                                          Warren S. Heit
                                            Plaintiff, In Pro Per
15                                          and Counsel for Deborah E. Heit

16

17

18

19

20

21

22

23

24

25

26

27

28

                                            -10-

# EXHIBIT A

CLIFFORD T. HAYES    8    P    2388690000
KOOTENAI COUNTY RECORDER
SEH                  12/17/2012 2:58 PM
REQ OF ALLIANCE TITLE - COEUR D' ALENE
OFFICE
RECORDING FEE: $31.00              XX
Electronically Recorded

## JOINT USE AND MAINTENANCE AGREEMENT

This Agreement is made and entered into this 14 day of DECEMBER , 2012 by and between WARREN S. HEIT and DEBORAH HEIT, husband and wife, hereinafter referred to as "Heit", whose address is ~~[redacted]~~ and JAMES CAMERON, a married man dealing with his sole and separate property, hereinafter referred to as "Cameron."

RECITALS

1.    Cameron owns the property legally described on Exhibit "A" attached hereto and Heit has agreed to purchase and will own the property legally described on Exhibit "B" attached hereto, and

2.    The above described properties have a common boundary and each property has a residence and lakeshore frontage on Coeur d'Alene Lake which is presently accessed by a motorized tram which is located on the property described in Exhibit "B", and

3.    The parties intend by this agreement to create joint and mutual rights and obligations in and to said tram, including but not limited to, mechanical and motorized parts and the track utilized for the same;

NOW-THEREFORE, for valuable consideration the parties agree as follows:

1.    The owners of the property described on Exhibit "A" shall have an easement and right of access over the property described on Exhibit "B" for ingress and egress to and from the tram located on the Exhibit "B" property, it being understood and agreed that said tram shall hereinafter be utilized in common by the owners of the properties described on Exhibit "A" and Exhibit "B" attached hereto, and their guests and invitees.

JOINT USE AND MAINTENANCE AGREEMENT - 1

SECOND AMENDED COMPLAINT

2.      The parties agree that all the costs of electrical power, operation, maintenance, repair, and necessary replacement associated with said tram shall be shared equally between the owners of the two parcels above referred to.

In the event an owner of either parcel fails to pay the costs of operation, maintenance, repair or necessary replacement as above required, and an action is brought to collect or enforce the terms hereof, the prevailing party to such action shall be entitled to attorney's fees and costs incurred therein.

3.      This agreement and the rights and obligations contained herein shall be binding upon and inure to the benefit of the parties hereto, their heirs and assigns, and shall be appurtenant to the two parcels above described.

4.      This agreement shall become effective upon Heit obtaining title to the property described on Exhibit "B" and the recording of the same.

5.      This Agreement may be executed in counterparts, each of which, when taken together, shall be deemed one fully executed original.

DATED this 14 day of December, 2012.

_____
WARREN S. HEIT

_____
DEBORAH HEIT

_____
JAMES CAMERON

JOINT USE AND MAINTENANCE AGREEMENT - 2

SECOND AMENDED COMPLAINT

2.    The parties agree that all the costs of electrical power, operation, maintenance, repair, and necessary replacement associated with said tram shall be shared equally between the owners of the two parcels above referred to.

In the event an owner of either parcel fails to pay the costs of operation, maintenance, repair or necessary replacement as above required, and an action is brought to collect or enforce the terms hereof, the prevailing party to such action shall be entitled to attorney's fees and costs incurred therein.

3.    This agreement and the rights and obligations contained herein shall be binding upon and inure to the benefit of the parties hereto, their heirs and assigns, and shall be appurtenant to the two parcels above described.

4.    This agreement shall become effective upon Heit obtaining title to the property described on Exhibit "B" and the recording of the same.

5.    This Agreement may be executed in counterparts, each of which, when taken together, shall be deemed one fully executed original.

DATED this _14_ day of _December_, 2012.

_____
WARREN S. HEIT

_____
DEBORAH HEIT

_____
JAMES CAMERON

JOINT USE AND MAINTENANCE AGREEMENT - 2

-14-                                    SECOND AMENDED COMPLAINT

STATE OF _____ )
                                    ss.
County of _____ )

On this _____ day of _____, 2012, before me, the undersigned Notary Public, personally appeared WARREN HEIT and DEBORAH HEIT, known or identified to me to be the persons whose names are subscribed to the foregoing instrument and acknowledged to me that they executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

Notary Public for _____
Residing at _____
My Commission expires: _____

STATE OF IDAHO   )
                                    ss.
County of Kootenai   )

On this _____ day of _____, 2012, before me, the undersigned Notary Public, personally appeared JAMES CAMERON, known or identified to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

Notary Public for Idaho
Residing at _____
My Commission expires: _____

JOINT USE AND MAINTENANCE AGREEMENT - 3

SECOND AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

## ACKNOWLEDGMENT

State of California
County of _Santa Clara_ )

On _12/14/2012_ before me, _C. A. Vrooman, Notary Public_
(insert name and title of the officer)

personally appeared _Warren S. Heit and Deborah Heit_
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

C. A. VROOMAN
Commission # 1831435
Notary Public - California
Alameda County
My Comm. Expires Jan 18, 2013

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-16-

SECOND AMENDED COMPLAINT

STATE OF _____ )
                              ss.
County of _____ )

    On this _____ day of _____, 2012, before me, the undersigned Notary Public, personally appeared WARREN HEIT and DEBORAH HEIT, known or identified to me to be the persons whose names are subscribed to the foregoing instrument and acknowledged to me that they executed the same.

       IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

                              Notary Public for _____
                              Residing at _____
                              My Commission expires: _____

STATE OF ~~IDAHO~~ *California* )
                                          ss.
County of ~~Kootenai~~ *Riverside* )

    On this *14th* day of *December*, 2012, before me, the undersigned Notary Public, personally appeared JAMES CAMERON, known or identified to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same.

       IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.

                              Notary Public for ~~Idaho~~ *California*
                              Residing at *Palm Desert, CA*
                              My Commission expires: *July 30, 2016*

TOMM BELANICH
Commission # 1985769
Notary Public - California
Riverside County
My Comm. Expires Jul 30, 2016

JOINT USE AND MAINTENANCE AGREEMENT - 3

-17-

Exhibit "A"

That certain real property lying within the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Kootenai County, Idaho, and being a portion of that certain plat of Killdare Heights recorded in Book C of Plats at Page 253 in May 1949 in the Records of said county, and also being a portion of the East Side Highway District Resolution #2007-02 recorded as Instrument Number 2081518000 on February 5, 2007 in the Records of said county, more particularly described as follows:

COMMENCING at a 2 inch iron pipe on the easterly extension of the north line of Killdare Heights as shown on the Record of Survey filed in Book 3 of Surveys at Page 142 on September 29, 1981 in the Records of said county;

thence along said north line West 171.42 feet to the TRUE POINT OF BEGINNING on the northerly extension of the east line of Lot 4 as shown on said Record of Survey;

thence along the east line of Lot 4 and the northerly extension thereof,  South 37°21'47" West 82.05 feet;

thence leaving said east line of Lot 4 along an adjusted lot line the following courses:
(1)    North 52°36'11" West 14.90 feet;
(2)    thence South 89°59'59" West 120.58 feet;
(3)    thence North 86°16'07" West 22.68 feet to a meander line as shown on said Record of Survey;
(4)    thence North 86°16'07" West approximately 43.54 feet to the bank of Lake Coeur d'Alene;

thence meandering northeasterly along the bank of Lake Coeur d'Alene the following courses:
(1)    North 35°21'31" East approximately 41.96 feet;
(2)    thence North 46°48'44" East approximately 25.77 feet, to the north line of Killdare Heights as shown on said Record of Survey;

thence along said north line of Killdare Heights South 90°00'00" East approximately 46.12 feet to a ½" iron rod and cap stamped LS 3451 on a meander line as shown on said Record of Survey;

thence South 90°00'00" East 159.09 feet to the TRUE POINT OF BEGINNING;

Containing 0.27 acres, more or less.

EXCEPTING THEREFROM any sovereign state lands owned by the State of Idaho.

End of Description.



Exhibit "A"

SECOND AMENDED COMPLAINT

EXHIBIT "B"

That certain real property lying within the ~~Southeast Quarter of Section 30~~ ~~Township 30~~ ~~~~, Kootenai County, Idaho, and being a portion of that certain plat of Killdare Heights recorded in Book C of Plats at Page 253 in May 1949 in the Records of said county, more particularly described as follows:

COMMENCING at a 2 inch iron pipe on the easterly extension of the north line of Killdare Heights as shown on the Record of Survey filed on Book 3 of Surveys at Page 142 on September 29, 1981 in the Records of said county;

thence along said north line West 171.42 feet along the northerly extension of the east line of Lot 4 as shown on said Record of Survey;

thence along said east line of Lot 4 and the northerly extension thereof, South 37°21'47" West 82.05 feet to the TRUE POINT OF BEGINNING;

thence leaving said east line of Lot 4 along an adjusted lot line the following courses:
(1) North 52°36'11" West 14.90 feet;
(2) thence South 89°59'59" West 120.58 feet;
(3) thence North 86°16'07" West 22.68 feet to a meander line as shown on said Record of Survey;
(4) thence North 86°16'07" West approximately 43.54 feet to the bank of Lake Coeur d'Alene;

thence meandering southwesterly along the bank of Lake Coeur d'Alene South 35°21'31" West approximately 65.94 feet to the north line of the south 10 feet of Lot 3 as described in the Warranty Deed recorded as Instrument Number 2059318000 on October 4, 2006 in the Records of said county and as shown on said Record of Survey;

thence along the north line of the south 10 feet of said Lot 3, South 86°14'45" East approximately 37.04 feet to a point on a meander line as shown on said Record of Survey;

thence continuing along the north line of the south 10 feet of said Lot 3, South 86°14'45" East 159.35 feet to the east line of said Lot 3;

thence along the east line of said Lot 3 and said Lot 4, North 37°21'47" East 67.04 feet to the TRUE POINT OF BEGINNING;

EXCEPTING THEREFROM any sovereign state lands owned by the State of Idaho.

EXHIBIT "B"

-19-

SECOND AMENDED COMPLAINT

# EXHIBIT B



Coeur d'Alene,
1800 Northwest Boulevard, Suite 200
Coeur d'Alene, Idaho 83814

**Spokane:**
505 W. Rivers de Avenue, Suite 215
Spokane, Washington 99201



www.BristolGeorge.com
866-511-1500

October 13, 2023

<u>Via Regular and Certified Mail to:</u>
Warren Heit and Deborah Heit                    Warren Heit and Deborah Heit
~~████████████████~~                            ~~████████████████~~
~~████████████████~~                            ~~████████████████~~

**RE:    Livingston/Heit Joint Use and Maintenance Agreement**

Mr. and Mrs. Heit:

Our office represents Scott and Shari Livingston. This letter is written regarding the Joint Use and Maintenance Agreement you entered with James Cameron, the predecessor in interest of Mr. and Mrs. Livingston, recorded on December 17, 2012 under Kootenai County Instrument No. 2388690000 (the "Easement"). A copy of the Easement is enclosed with this letter.

Mr. and Mrs. Livingston are constructing their own tram which will be located entirely on their property. Until their tram is completed, the Livingstons will continue to use and contribute toward the maintenance of the existing tram.

Currently, the electrical system for the tram is located on the Livingston's property. At the beginning of the Livingston's tram construction, they respectfully request you relocate the electrical system for the existing tram to your own property at your expense.

After their tram is completed, the Livingstons will record a Notice of Termination of their interest in the Easement. Once the Notice of Termination has been recorded, Mr. and Mrs. Livingston will no longer contribute towards any maintenance of the tram located on your property, as their rights and obligations under the Easement will be terminated.

We wanted to make you aware so that you could adequately prepare for the Notice of Termination to be recorded. We will provide you with a copy of the Notice of Termination once it is recorded.

Regards,
**BRISTOL & GEORGE**


Cody T. Ross
Attorney at Law

Enc.:    Joint Use and Maintenance Agreement

-21-                                    SECOND AMENDED COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14 EXHIBIT C
15
16
17
18
19
20
21
22
23
24
25
26
27
28



1
2
3
4
5
6
7
8
9
10
11
12
13
14

# EXHIBIT D

16
17
18
19
20
21
22
23
24
25
26
27
28

SECOND AMENDED COMPLAINT



SECOND AMENDED COMPLAINT

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2024, I sent the foregoing document to the following person via email and overnight delivery:

Gregory M. George, ISB #9937
1900 Northwest Boulevard, Suite 200
Coeur d'Alene, ID 83814
Telephone: 208-664-4700
greg@bristolgeorge.com
*Attorney for Defendants*
*Scott and Shari Livingston*

By: _____
Warren S. Heit
Plaintiff, In Pro Per
and Counsel for Deborah E. Heit